UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

ANGIE DAVIS, Individually and on behalf of
DWIGHT WILLIAMS deceased,

                Plaintiff,

   v.

ST. LOUIS COUNTY, MISSOURI,

      Serve:  St. Louis County Clerk
            105 S. Central Ave
            St. Louis, MO 63105,

KELLY WILKENS

      Serve: Buzz Westfall Justice Center
           100 South Central Avenue
           Clayton, Missouri 63105,

DAVID DOOLEY

      Serve: Buzz Westfall Justice Center
           100 South Central Avenue
           Clayton, Missouri 63105,

JANIE STEPHENS

      Serve: Buzz Westfall Justice Center
           100 South Central Avenue
           Clayton, Missouri 63105,

DR. DAWN DAVIS

      Serve: Buzz Westfall Justice Center
           100 South Central Avenue
           Clayton, Missouri 63105,

VALERIE NELSON

      Serve: Buzz Westfall Justice Center
           100 South Central Avenue
           Clayton, Missouri 63105

***JURY TRIAL DEMANDED***

LISA MAXWELL,

      Serve: Buzz Westfall Justice Center
           100 South Central Avenue
           Clayton, Missouri 63105

      Defendants.

## COMPLAINT

COMES NOW, Plaintiff, Angie Davis, individually and on behalf of her son, Dwight Williams, deceased, and for her Complaint for *damages and injunctive relief* against Defendants St. Louis County, Kelly Wilkins, David Dooley, Janie Stephens, Dawn Davis, Valerie Nelson and Lisa Maxwell states as follows:

## STATEMENT OF CASE

1.     On May 15, 2020, thirty-one-year-old (31) Dwight Williams died in the custody of St. Louis County after being detained without providing Mr. Williams his prescription medication. Prior to his death, Mr. Williams was living with his mother and was in active treatment for his opioid use through *Assisted Recovery Centers of America* (herein after referred to as *"ARCA")*. Upon his arrival at St. Louis County Jail, Mr. Williams was taking Suboxone, a drug that was helping manage addiction that was prescribed to Mr. Williams through *ARCA*. Despite St. Louis County and Defendants actual knowledge that Mr. Williams was undergoing voluntary treatment for his addiction and had an active doctor's prescription for Suboxone, a serious medical need, St. Louis County, their supervisors and individual defendants were deliberately indifferent to Mr. Williams' medical needs despite Defendant's knowledge of previous deaths at the jail as a result of detainees abruptly ending their course of medication or related to Opioid Use Disorder (*herein after referred to as "OUD"). .* St. Louis County and defendants were further aware of

1

complications when abruptly stopping Suboxone. Mr. Williams died shortly after his incarceration after Defendants failed to provide his prescription medication[1]. The St. Louis County medical examiner found Mr. Williams' cause of death was cardiomyopathy "exacerbated by opioid withdrawal", therefore directly related to defendants ceasing Mr. Williams' treatment.

2.      In the years following Mr. Williams' death, Plaintiff, mother, investigated and learned that *prior* to her son's untimely death at thirty-one years old, St. Louis County had a well-known, systemic and documented problem providing detainees medication, particularly their OUD medication. Despite St. Louis County's knowledge of the serious risk for substantial harm to detainees having their medical treatment cut short, St. Louis County and its supervisors, while acknowledging this pattern and practice did not seriously address it, resolve it, or supervise and discipline employees who violated St. Louis County policies. Indeed, St. Louis County Medication Assisted Treatment (herein after referred to as "MAT") policies were routinely violated without any effect. St. Louis County's *written policies* bore no resemblance to the reality and actual practice inside the jail. Indeed, the custom and practice of failing to provide medication prescribed by an outside physician was so pervasive that employees routinely acknowledged the problem, blew the whistle and complained with no effect.

3.      One such St. Louis County employee complained that patients were "forced to go through withdrawal from [their prescription] medication" which they claimed was a violation of St. Louis County policies, the American with Disabilities Act, and the patient's Eighth Amendment rights. St. Louis County employees also filed multiple complaints directly to St. Louis County supervisors stating that patients came into the jail with an *active prescription* for Suboxone,

---

[1] A National Institute of Health article found that "Opioid withdrawal syndrome is a life-threatening condition resulting from opioid dependence." https://www.ncbi.nlm.nih.gov/books/NBK526012/

but, like Mr. Williams, these patients were ignored, and their doctor's prescribed medication was discontinued. One such St. Louis County employee also repeatedly complained about a lack of accountability and lack of "clinical oversight" or supervision related to the Medication Assisted Treatment (MAT) program. St. Louis County's own employees, in their own words, repeatedly claimed that St. Louis County and its supervisors were indifferent to their patient's medical needs, including their patient's need for their current prescription medication.

4.      As such, Plaintiff Angie Davis herein alleges that Defendants violated her son's Eighth and Fourteenth Amendment Due Process rights, that St. Louis County and their supervisors failed to train, supervise or discipline their employees to provide detainees current prescription medication, that St. Louis County had an unconstitutional custom or practice of failing to provide detainees their current prescription medication, violation of the American with Disabilities Act (42 U.S.C. § 12132), and violation of Section 504 of the Rehabilitation Act, (29 U.S.C. § 794)

## JURISDICTION AND VENUE

5.      Jurisdiction is proper to this Court, pursuant to 28 U.S.C. §§ 1331 and 1343, which provides this Court with original jurisdiction over cases and controversies raising federal questions and claims. Further, this Court has supplemental jurisdiction over Plaintiff's state law claims, pursuant to 28 U.S.C. § 1367, including the Americans with Disabilities Act (42 U.S.C. § 12101 et seq.) and the Rehabilitation Act (29 U.S.C. § 794).

6.      Venue is proper in this district under 28 U.S.C. § 1391(b) because the events giving rise to this action occurred in St. Louis County, Missouri.

## PARTIES

7.      Plaintiff Angie Davis (hereinafter "Plaintiff Davis") is and was at all times relevant herein a citizen of the United States of America and a resident of the State of Missouri. Further,

Plaintiff Davis is the mother of Dwight Williams and therefore the appropriate party to bring action on his behalf. Her son, Dwight Williams, the decedent, was an individual with a disability, namely opioid use disorder (OUD), and was prescribed Suboxone (buprenorphine/naloxone) prior to his short incarceration at the jail, a prescription which was discontinued. Plaintiff brings this action on behalf of her son pursuant to 42 U.S.C. § 1983.  At all relevant times, Ms. Williams was a pretrial detainee in the custody of the St. Louis County Justice Center and was a qualified individual with a disability under the Americans with Disabilities Act.

8.     Defendant St. Louis County, Missouri (hereinafter "St. Louis County") is a body politic, municipal corporation and/or political subdivision of the State of Missouri, organized and existing pursuant to the Missouri Constitution and State Law. Defendant St. Louis County operates with authority over the St. Louis County Jail and is also a public entity within the meaning of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131(1) and 42 U.S.C. § 12131(1)(B).

9.     Defendant Dawn Davis (hereinafter "Defendant Davis") is and was at all times relevant herein a citizen of the United States of America. Defendant Davis was the lead physician of Corrections Medicine at the St. Louis County jail. At all times relevant herein Defendant Davis was acting under the color of state law. For purposes of Plaintiff's federal claims, Defendant Davis is named in her individual capacity.

10.    Defendant Kelly Wilkens (hereinafter "Defendant Wilkens") is and was at all times relevant herein a citizen of the United States of America. Defendant Wilkens is a nurse practitioner at the St. Louis County Jail and thus has an obligation to care for detainees at St. Louis County Jail and protect them from harm. At all times relevant herein Defendant Wilkens was acting under

color of state law and authority of her position with St. Louis County. For purposes of Plaintiff's federal claims, Defendant Wilkens is named in her individual capacity.

11.     Defendant David Dooley (hereinafter "Defendant Dooley") is and was at all time relevant hereto a citizen of the United States and a registered nurse employed by St. Louis County who worked within the jail.  At all times relevant hereto, Defendant Dooley was acting under color of state law and authority of his position with St. Louis County. For purposes of Plaintiff's federal claims, Defendant Dooley is named in his individual capacity.

12.     Defendant Janie Stephens (hereinafter "Defendant Stephens") is and was at all times relevant hereto a citizen of the United States and a nurse employed by St. Louis County who worked within the jail.  At all times relevant hereto, Defendant Stephens was acting under color of state law and authority of her position with St. Louis County. For purposes of Plaintiff's federal claims, Defendant Stephens is named in her individual capacity.

13.     Defendant Valerie Nelson (hereinafter "Defendant Nelson") is and was at all times relevant herein a citizen of the United States of America. Upon information and belief, Defendant Nelson was the Chief Operating Officer (COO) of St. Louis County's Corrections Medicine at the jail in May 2020, responsible for supervising nurses and also responsible for supervising the Medication Assisted Treatment program (MAT). MAT was responsible for ensuring patients who enter the jail already in treatment for Opioid Use Disorder, like Mr. Williams, are provided their prescription medication.. At all times relevant herein Defendant Nelson was acting under the color of state law. For purposes of Plaintiff's federal claims, Defendant Davis is named in her individual capacity.

14.     Defendant Lisa Maxwell (hereinafter "Defendant Maxwell") formerly Lisa Wellman, is and was at all times relevant herein a citizen of the United States of America. Upon

information and belief, Defendant Maxwell was the Nurse Manager of Corrections Medicine directly responsible for training St. Louis County employees at the jail in May 2020 to administer the Medication Assisted Treatment program (MAT). MAT was responsible for ensuring patients who enter the jail already in treatment for Opioid Use Disorder, like Mr. Williams, are provided their prescription medication while a detainee at the jail. At all times relevant herein Defendant Maxwell was acting under color of state law. For purposes of Plaintiff's federal claims, Defendant Davis is named in her individual capacity.

## ALLEGATIONS COMMON TO ALL COUNTS

15.     Plaintiff hereby incorporates by reference the allegations made in each preceding paragraph as if each were set forth herein

16.     Prior to his arrest for the petty theft of five pairs of socks, Mr. Williams was being treated for addiction, and his doctor prescribed Mr. Williams Suboxone, a synthetic opioid used to treat opioid abuse disorder, which Mr. Williams was taking

17.     Suboxone withdrawal mimics that of other opioids, and when Suboxone is discontinued abruptly or "cold turkey," complications can include but are not limited to changes in blood pressure, dehydration, and heart failure.

18.     St. Lois County Corrections Medicine Policy CM-69 states, in part, that Patients with confirmed prescribed buprenorphine or naltrexone products (Suboxone) will be assessed, and if the patient meets program criteria, therapy will be initiated.

19.     St. Louis County and all Defendants knew that Mr. Williams had a confirmed buprenorphine prescription of Suboxone.

20.     Mr. Williams had a medical diagnosis of opioid use disorder (OUD) and was actively receiving prescribed Medication Assisted Treatment (MAT) in the form of Suboxone. This constitutes a disability under the ADA, 42 U.S.C. § 12102(1)(A).

21.     Defendants were aware of Plaintiff's disability and need for prescribed Suboxone as part of ongoing MAT for Opioid Use Disorder. Despite repeated requests and medical documentation of Mr. Williams' prescription, Defendants failed to provide Mr. Williams' doctor ordered and medically necessary treatment during his detention, resulting in unnecessary severe withdrawal, pain, suffering and death.

22.     Despite being notified of Mr. William's diagnosis and doctor's prescription, Defendants and St. Louis County officials refused to provide Suboxone or an appropriate medical alternative and instead provided him Clonidine, not an equivalent treatment, but instead merely a blood pressure medication.

23.     St. Louis County defendants ignored Mr. Williams' outside doctor's orders and by providing him Clonidine, a blood pressure medication, St. Louis County used an "off-label" medication to treat OUD. Clonidine is also not FDA approved to treat Mr. William's condition, OUD.

24.     Under information and belief, despite his prescription, the Defendants did not assess Mr. Williams and did not provide Mr. Williams with his life-saving prescription medication.

25.     Pursuant to St. Louis County Correction Medicine Policy 69, Mr. Williams prescribed medications should have been dispensed immediately to prevent him from spiraling into a dangerous, life-threatening buprenorphine withdrawal.

26.     Pursuant to St. Louis County Correction Medicine Policy CM-69, all staff nurses were responsible for the assessment and the distribution of Mr. Williams' medications.

27.     Pursuant to St. Louis County Correction Medicine Policy CM-69, under information and belief, Defendant Dr. Dawn Davis was responsible for reviewing Mr. Williams' history and make an Opioid Use Disorder, talking with patient and prescribing buprenorphine

28.     During his medical intake at St. Louis County Jail, Mr. Williams reported a history of addiction and his prescription use of Suboxone to treat addiction to the intake nurse Defendant Dooley and Defendant Stephens, as well as a recent incision and drainage procedure on his left hand.

29.     During Mr. Williams's intake into jail, Defendant Dooley noticed that Mr. Williams's incision and drainage site appeared to be infected.

30.     Indeed, Mr. Williams reported to nurse practitioner Defendant Wilkins that he was admitted into a hospital, Christian Northeast to receive intravenous antibiotics for three (3) days just one week prior to his arrest and that he was expected to return on May 15, 2020, to remove a primrose  drain, the day Mr. Williams died.

31.     Defendants made no attempt to transport Mr. Williams to Christian Northeast or, under information and belief, made no attempt to obtain or review Mr. Williams' Christian Northeast records prior to finding him fit for confinement.

32.     Defendant Wilkens examined Mr. Williams's hand, removed a Penrose drain that had been placed in it during his incision and drainage operation prior to Mr. Williams' incarceration, and provided Mr. Williams Bactrim, an antibiotic, and Ibuprofen, an anti-inflammatory.

33.     After this, Defendant Dooley continued his intake examination of Mr. Williams. During this examination, Defendant Dooley determined that Mr. Williams was in acute withdrawal, but instead of providing Mr. Williams with his prescription medication, Suboxone, he

provided Mr. Williams Clonidine, Loperamide, and Promethazine pursuant to Defendant Dr. Davis's physician's standing order.

34.     Defendant Dr. Davis executed the standing order in effect on May 15, 2020, governing the treatment of Mr. Williams.

35.     Defendant Janie Stephens also knew and noted the fact that Mr. Williams was prescribed Suboxone by his doctor through Assisted Recovery Centers of America ("ARCA").

36.     Neither Defendant Dooley or Stephens ensured that Mr. Williams received his prescription Suboxone.

37.     On May 15, 2020, at approximately 11:30 p.m., correctional officer Vilmer escorted Mr. William to his cell and it was obvious and known to correctional officer Vilner that Mr. Williams was experiencing acute withdrawal or OUD.

38.     It was also obvious to Mr. Williams's cellmate Joshua Murray that Mr. Williams was experiencing acute withdrawal or OUD.

39.     After a night of pain, suffering and acute withdrawals from the jail's failure to provide Mr. Williams with his prescription medication, at approximately 6:20 a.m. on May 15, Mr. Williams was found unresponsive in his cell.

40.     Mr. Williams was pronounced dead at 6:48 a.m. on May 15, 2020, at thirty-one (31) years old.

41.     The St. Louis County medical examiner's report determined Mr. Williams's cause of death to be cardiomyopathy exacerbated by opioid withdrawal.

42.     The sudden cessation of Mr. Williams' prescription medication and the failure to provide Mr. Williams with his prescription medication led to acute withdrawals that caused Mr. Williams' death.

43.     Even though Defendants and the jail's medical staff knew and/or should have known of Mr. Williams's serious need for medical attention, including the distribution of his prescribed medication, they failed to provide him with his medication, and adequate and timely medical care, including but not limited to providing Suboxone to Mr. Williams to prevent withdrawal complications, and/or ensuring the close monitoring Mr. Williams, now with the further complication of infection and following the administration of antibiotics and the off label use of Clonidine.

44.     Defendants intentionally, willfully, maliciously, and while acting under the color of state law, showed a deliberate indifference to Mr. Williams's escalating medical needs, in that they had actual knowledge of his serious medical need, his current prescription for medication to treat OUD and his infection and were deliberately indifferent to his need for his prescription medication and close monitoring.

45.     Despite all of the above conditions, Mr. Williams wasn't sent to a hospital, to see a doctor, or even to the jail infirmary.

46.     Instead, Mr. Wiliams was found fit for confinement and dispatched to a regular jail cell where he suffered acute Suboxone withdrawal all night and died.

47.     Defendant St. Louis County enacted inadequate policies and did not train, supervise or discipline its employees to ensure existing prescription medication distribution policies and close supervision of patients were followed to benefit the welfare of Mr. Williams.

48.     Under information and belief, there was no collaborative practice agreement in effect on May 15, 2020 between Defendant Dr. Davis and Defendants nurse Dooley, nurse Stephens or nurse practitioner Wilkins but despite this Defendants nurses and nurse practitioner

were allowed to prescribe or distribute the blood pressure medication Clonidine to Mr. Williams, instead of providing his prescription Suboxone, pursuant to Defendant Dr. Davis's standing orders.

49.     Under information and belief Defendant Davis was also not reviewing Defendant Wilkins, Dooley or Stephens' medical records with jail patients or auditing medical records of the nurses acting pursuant to her standing orders pursuant to RSMo. 334.104.3(9)..

50.     Under information and belief, Defendant St. Louis County and Defendant Dr. Davis also failed to train or supervise their employees interacting with patients coming into the jail with a pre-existing prescription and/or failed to discipline their employees for their failures to provide patients' prescription medication in the period of time leading up to Ms. Williams' death.

51.     Defendants, acting under the color of law, acted individually and in concert to deprive Mr. Williams of adequate medical care, which includes providing him his prescription medication, which Mr. Williams was entitled under the Eighth and Fourteenth Amendments to the Constitution and 42 U.S.C. § 1983.

52.     As a direct and proximate cause of Defendants' deliberate indifference, Ms. Williams experienced pain, suffering and death and Plaintiff Davis suffered a loss of her beloved son.

*Municipal and Supervisory Liability*

53.     In March 2014, years before Ms. Williams' death, St. Louis County Corrections Medicine supervisors, the supervisory predecessors to Defendant Dr. Davis, acknowledged a pattern of their nurses failing to distribute OUD medications.

54.     As a result of this actual knowledge of a custom and practice of failing to distribute medications, St. Louis County nurse managers created a PDCA ("Plan-Do-Check-Act"), a quality

control process, to address St. Louis County's pervasive pattern of failures to treat detainees with Opioid Use Disorder, including the pervasive failure to provide detainees medication.

55.    In addition to the March 2014 PDCA, St. Louis County internal emails demonstrated St. Louis County nurses and their supervisors acknowledging the pervasive problem of providing inadequate medical care to patients suffering from OUD.

56.    This pervasive problem and pattern, as internally acknowledged by St. Louis County, persisted for years, leading to the death of Mr. Williams in 2020, and internal St. Louis County emails continued after Mr. Williams' death continued to demonstrate acknowledgment of this pervasive and uncorrected custom, pattern or practice.

57.    St. Louis County also recognized, internally, that this custom, pattern or practice also created a substantial risk of serious harm to their patients.

58.    Indeed, Rita Hendrix, a former long time Nurse Manager and supervisor for St. Louis County Corrections Medicine testified in a case related to a previous detainee death that acute withdrawal is a serious medical condition that caused or contributed to cause more than twenty (20) deaths at the St. Louis County jail in the eight years prior to 2015.

59.    Ms. Hendrix also testified that the 2014 PDCA acknowledging the medication distribution problem at the jail was never completed.

60.    Between 2015 and Mr. Williams' death in 2020, even more jail patients died because of complications related to acute withdrawal.

61.    Other former nurse managers and nurse supervisors at the St. Louis County jail also testified in other litigation that the March 2014 PDCA that identified the custom and pattern of failing to distribute OUD medications to jail patients suffering was simply never completed.

62.    Therefore, it was well known for years, within the St. Louis County jail medical community, including but not limited to Defendant Dr. Davis, that sudden opioid withdrawal and/or sudden cessation of Suboxone and related prescription medication carried high risks, was medically dangerous, and could cause or contribute to causing suffering and death.

63.    Indeed, another former nurse manager, Fay Sweeney, testified on September 11, 2023 that the MAT program at the jail was in effect and that a jail doctor, physician's assistant or a nurse practitioner like Defendant Wilkens could have prescribed Suboxone.

64.    Former nurse manager Ms. Sweeney also testified that the failure to provide Suboxone to detainee patients was a "persistent problem" at the jail through at least 2023, when Ms. Sweeney resigned as nurse manager, three years after Mr. Williams' death.

65.    Former nurse manager Sweeney also testified that MAT eligible patients were frequently not being referred to the MAT program or provided with Suboxone.

66.    Former nurse manager Sweeney testified that patients at the jail have "a constitutional right" to their currently prescribed medication or medication that is substantially similar.

67.    Former nurse manager Fay Sweeney also testified that while the MAT policies were technically in force during May 2020, the *custom and practice*, contrary to the written policies, was that MAT was *not being administered at all*, notwithstanding the dictates of the written policies, in May 2020.

68.    Under information and belief, notwithstanding the fact that MAT wasn't being administered at all in May 2020, St. Louis County continued to apply for and receive federal money to administer a non-existent MAT program.

69.    Defendant Valerie Nelson was at all times relevant the Chief Operating Officer of St. Louis County Department of Public Health Corrections Medicine and the direct supervisor of Defendant Dr. Davis.

70.    Defendant Nelson was also a supervisor of the MAT program at St. Louis County jail responsible, *inter alia,* for ensuring detainee patients, like Mr. Williams, received their previously physician prescribed medication (including Suboxone) upon their arrival at the jail.

71.    Defendant Lisa Maxwell was a nurse supervisor for St. Louis County responsible for training St. Louis County nurses on administering the MAT program responsible for ensuring detainee patients received their previously prescribed OUD medication (including Suboxone) when arriving at the jail.

72.    Under information and belief, Defendant Nelson and Maxwell were responsible for supervising St. Louis County jail's MAT policies and program at the time Mr. Williams entered the jail in May 2020.

73.    Prior to Ms. Williams' death, Defendants St. Louis County, Dr. Davis, Nelson and Maxwell knew that Opioid Use Disorder was a serious medical need, and they also knew that St. Louis County jail was failing to provide adequate medical care to this patient population, including failing to provide detainees with their outside medical doctor's prescription and/or Suboxone.

74.    Upon information and belief, this pervasive pattern of failing to distribute prescribed medication and failing to adequately treat patients suffering from OUD persists today supporting Plaintiff's request for injunctive relief.

75.    All of the aforementioned omissions and actions demonstrate that all Defendants' actions were reckless and/or callously indifferent to Mr. Williams's federal rights and the

14

constitutional rights of other patients of the jail thus entitling Plaintiff to punitive damages for the violation of her son's constitutional rights.

76.    The plaintiff is entitled to compensation for violations of Mr. Williams's constitutional rights that all Defendants inflicted upon him, including, but not limited to all damages allowable under federal law, including compensatory damages, damages for the pain and suffering of Ms. Willians, attorneys' fees, and punitive damages.

## COUNT I
### Failure to Provide Adequate Medical Care in violation of the Eighth and Fourteenth Amendments, Cognizable Under 42 U.S.C. § 1983
***Against Defendants Dr. Davis, Valerie Nelson, Lisa Maxwell, Kelley Wilkens, David Dooley, and Janie Stephens***

77.    Plaintiff hereby incorporates by reference the allegations made in each preceding paragraph as if each were set forth herein.

78.    Mr. Williams's opioid dependence and resulting withdrawal constituted an objectively serious health condition recognized by St. Louis County jail.

79.    Defendants were aware of Mr. Williams's past and present medical conditions on May 14, 2020.

80.    Defendants Kelley Wilkens, David Dooley, Janie Stephens, Valerie Nelson, Lisa Maxwell and Dr. Davis were aware or should have been aware of Mr. Williams's serious medical need, as indicated by his previous prescription, statements, observations and behaviors.

81.    Further, under information and belief, laypersons including but limited to correctional officer Vilmer and Mr. Williams' cellmate observed the obviousness of Mr. Williams serious medical need.

82.    Defendants Kelley Wilkens, David Dooley, Janie Stephens, Valerie Nelson, Lisa Maxwell and Davis failure to continue Mr. Williams prescribed medication, Suboxone and instead

15

let Mr. Williams suffer Suboxone withdrawals and without seeing a doctor or receiving close observation demonstrated their deliberate indifference to Mr. Williams' medical need.

83.    Alternatively, pursuant to *Kingsley v. Hendrickson*, 576 U.S. 389 (2015) defendants should have known of a medical or health risk to pretrial detainee Mr. Williams and did nothing to abate the risk.

84.    Defendant Dooley, Stephens, and Wilken's failures to send Mr. Williams to the infirmary to ensure that Mr. Williams was closely monitored while on several drugs with several known adverse interactions was not appropriate care, and while treating him for an infection also exhibited deliberate indifference to his serious medical needs.

85.    Additionally, Defendant Dooley and Defendant Wilken's failures to contact other medical professionals and/or to ensure that Mr. Williams was closely monitored exhibited their deliberate indifference to Mr. William's medical need.

86.    The defendants' deliberate denial of appropriate medical care demonstrates deliberate indifference towards Mr. Williams's condition.

87.    Defendants knew and/or should have known that Mr. Williams was at substantial risk of serious injury to his health, including the possibility of death, from his medical condition and the medications prescribed and discontinued but disregarded that risk.

88.    Defendants were aware or should have been aware that denying Mr. Williams adequate medical care for his serious medical condition was a denial of Mr. Williams his United States constitutional rights.

89.    In committing the acts alleged herein, Defendants acted willfully, recklessly, maliciously, and with deliberate indifference to Mr. Williams and his serious medical needs and need for safe medical care.

90.     Defendants were at all times acting under color of state law.

91.     As a direct and proximate result of the acts and omissions of Defendants, while acting alone and/or in concert with others and with deliberate indifference to Mr. Williams's rights and serious medical needs, Mr. Williams suffered severe and devastating damages, unnecessary pain and suffering, and injuries, and ultimately his untimely death.

92.     As the direct and proximate result of the acts and omissions of Defendants, while acting alone and with deliberate indifference to Mr. Williams's rights and serious medical needs, Plaintiff Davis has been deprived of Mr. Williams's companionship, comfort, consortium, support, love, and affection.

93.     The conduct of Defendants, as alleged herein, was wanton, willful, undertaken with evil motives, and/or displayed a deliberate indifference to Mr. Williams's constitutional rights, privileges and immunities, thereby justifying award of punitive damages against each individual Defendant, in his or her individual capacity, in an amount sufficient to punish and deter Defendants and others from engaging in like misconduct in the future.

94.     As a result of Defendants' unlawful actions and infringements of her protected rights, Plaintiff has been compelled to retain counsel in this matter and is therefore entitled to a recovery of attorney's fees and legal costs pursuant to 42 U.S.C. § 1988.

**WHEREFORE,** Plaintiff Davis respectfully prays this Honorable Court enter judgement in her favor against Defendants Kelley Wilkens, David Dooley, Janie Stephens, Valerie Nelson, Lisa Maxwell and Dr. Davis; award her compensatory and punitive damages; award her reasonable costs and attorneys' fees; and grant any and all such other relief as this Court deems just and proper.

### COUNT II
### Failure to Train, Supervise, or Discipline, Cognizable Under 42 U.S.C. § 1983
### *Against Defendant St. Louis County, Dr. Davis, Valerie Nelson, and Lisa Maxwell*

95.     Plaintiff hereby incorporates by reference all the allegations made in each preceding paragraph as if each were set forth herein.

96.     Mr. Williams was suffering from Opioid Use Disorder and was being treated by a doctor with Suboxone.

97.     All Defendants were aware of Mr. Williams's serious medical condition, his ongoing treatment, and his current prescription for Suboxone.

98.     Under information and belief, hundreds of detainees enter the St. Louis County jail per year with a current medication prescription.

99.     Under information and belief, hundreds of detainees enter the St. Louis County jail per year diagnosed with OUD.

100.     The need to train, supervise or discipline St. Louis County jail and Corrections Medicine employees to ensure 1) patients entering the jail received their doctor prescribed medications, 2) patients suffering from OUD required their previously prescribed medication, and 3) patients on Suboxone needed to continue taking Suboxone so as to avoid a Suboxone withdrawal, and 4) that OUD patients needed to be closely monitored, was obvious to Defendants St. Louis County, Dr. Davis, Valerie Nelson, and Lisa Maxwell.

101.     Defendant St. Louis County and Defendant Dr. Davis oversaw policies and procedures relevant to the above treatment.

102.     Defendants St. Louis County, Dr. Davis, Valerie Nelson, and Lisa Maxwell. were responsible for training, supervision and discipline related to MAT program at the St. Louis County jail and ensuring that detainees received their prescription medication.

103.     Defendants St. Louis County, Dr. Davis, Valerie Nelson, and Lisa Maxwell. failed to properly train the medical staff at the jail to ensure that patients would receive appropriate care,

18

including their MAT and prescribed medication.

104.     Defendants St. Louis County, Dr. Davis, Valerie Nelson, and Lisa Maxwell. failed to train, supervise or discipline their employees related to providing detainees with their prescribed medication in the time prior to Ms. Williams' deprivation of his medication and subsequent death.

105.     More specifically, Defendants St. Louis County, Dr. Davis, Valerie Nelson, and Lisa Maxwell. failed to ensure that Defendants Wilkens, Dooley, and Stephens were trained in ways to ensure they provided detainees with their prescribed medications and monitored detainees who presented under the treatment of an outside physician with OUD.

106.     Defendants St. Louis County, Dr. Davis, Valerie Nelson, and Lisa Maxwell. also failed to discipline Defendants Wilkens, David Dooley, and Janie Stephens (or anyone else) for their acts and omissions which resulted in Mr. Williams's constitutional deprivations.

107.     Defendants St. Louis County, Dr. Davis, Valerie Nelson, and Lisa Maxwell. were also aware of a pervasive, widespread and well-known custom and practice of not providing OUD patients with their prescribed medications and Defendants St. Louis County and Dr. Davis were deliberately indifferent to this custom and practice.

108.     .Defendants St. Louis County, Dr. Davis, Valerie Nelson, and Lisa Maxwell's inadequate policies, procedures, customs, practices and actions – as well as their inadequate training, supervision and discipline permitted failures, including but not limited to: failure to ensure that inmates experiencing withdrawal would be properly provided their prescription medication, properly monitored, failure to ensure that medications were tapered off of rather than abruptly ceased, failure to ensure nurse practitioners reviewed all potential drug interactions prior to their prescription, and an overall failure to ensure that patients receive the proper observation commensurate with their symptoms, deprived Mr. Williams of his constitutional rights.

109.    Defendants St. Louis County, Dr. Davis, Valerie Nelson, and Lisa Maxwell. failure to supervise jail and medical staff constituted a tacit authorization of the offensive acts.

110.    Defendants St. Louis County, Dr. Davis, Valerie Nelson, and Lisa Maxwell. showed deliberate indifference to the pervasive, widespread and well-known custom and practice of not providing OUD patients with their prescribed medications.

111.    As a direct and proximate cause of the Defendants' negligent violation of Mr. Williams's civil rights, Mr. Williams suffered damages to which he is entitled under 42 U.S.C. § 1983.

112.    The conduct of the Defendants St. Louis County, Dr. Davis, Valerie Nelson, and Lisa Maxwell  was willful, malicious, oppressive, and/or reckless and are of such nature that punitive damages should be imposed in the amount commiserate with the wrongful acts alleged herein.

**WHEREFORE**, Plaintiff Davis respectfully prays this Honorable Court enter judgement in her favor against each of the individually named Defendants; award her compensatory and punitive damages; award her reasonable costs and attorneys' fees; and grant her any and all such other relief as this Court deems just and proper.

### COUNT III
### Unconstitutional Custom or Practice ("Monell liability") in violation of the Eighth and Fourteenth Amendment to the U.S. Constitution Cognizable Under 42 U.S.C, § 1983
### *Against Defendant St. Louis County*

113.    Plaintiff hereby incorporates by reference all the allegations made in each preceding paragraph as if each were set forth herein.

114.    The above-named individual defendants violated the constitutional rights of Mr. Williams.

115.    Defendant St. Louis County had specific and detailed knowledge of a pervasive,

widespread and well-known custom and practice of not providing OUD patients with their prescribed medications and St. Louis County's deliberate indifference to this unconstitutional custom was the moving force behind the decedent's injury and death.

116.    Defendant St. Louis County's unconstitutional custom and/or practice to ignore obvious signs of a severe medical condition and not provide appropriate, adequate medical treatment, including but not limited to providing detainees their prescribed medication deprived Mr. Williams of his constitutional rights.

117.    The misconduct of the individually-named Defendants, as described herein, deprived the federal rights of Mr. Williams and was authorized by and undertaken pursuant to a practice and custom that was so pervasive, widespread, well-known, and well-settled, as to constitute a standard operating procedure of Defendant St. Louis County, acting under the color of state law, in that it is and was it was the regular pattern, practice and custom for employees to ignore serious medical conditions, to not provide prescribed  medication to their patients, and as a result, this unconstitutional custom and practice was the moving force behind the violations of Williams's constitutional rights.

118.     The serious harms incurred by Mr. Williams were the direct consequence of this pattern, practice, and/or custom of Defendant St. Louis County.

119.    As a direct and proximate consequence of the acts of Defendants, Mr. Williams has suffered damages in the form of, inter alia, deprivation of his constitutional rights as guaranteed under the Eighth and Fourteenth Amendment, cognizable pursuant to 42 U.S.C. § 1983; physical pain and suffering; severe anxiety, fear, and mental anguish; and loss of life.

**WHEREFORE**, Plaintiff Angie Davis respectfully prays that this Honorable Court enter judgement in her favor and against Defendant St. Louis County; award her compensatory and

punitive damages; award her reasonable costs and attorneys' fees; and grant her any and all such other relief as this Court deems just and proper.

## COUNT IV
### Violation of Title II of the Americans with Disabilities Act (42 U.S.C. § 12132)
### *Against all Defendants*

120.    Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein

121.    Decedent Mr. Williams was, at all times relevant, a qualified individual with a disability within the meaning of the Americans with Disabilities Act ("ADA").

122.    Defendants denied decedent Mr. Williams the benefits of its services, programs, and activities, namely access to adequate and necessary medical care, on the basis of Plaintiff's disability.

123.    The Defendants' failure to accommodate Mr. Williams' OUD disability was intentional or showed deliberate indifference to Mr. Williams' disability.

124.    By refusing to provide medically necessary treatment for Plaintiff's son's disability, Defendants violated the ADA and were the proximate cause of Mr. Williams' pain, suffering and death.

125.    Plaintiff and her son, Mr. Williams, suffered damages, including pain, suffering and death, as a direct result of this unlawful conduct.

**WHEREFORE**, Plaintiff Angie Davis respectfully prays that this Honorable Court enter judgement in her favor and against Defendant St. Louis County; award her compensatory and punitive damages; award her reasonable costs and attorneys' fees pursuant to 42 U.SC. § 12205; Order *injunctive relief* requiring Defendant St. Louis County to enforce their MAT policies and require St. Louis County jail to promptly provide detainees with their current prescription medications and grant her any and all such other relief as this Court deems just and proper.\

22

**COUNT V**
**Violation of Section 504 of the Rehabilitation Act (29 U.S.C. § 794)**
*Against all Defendants*

126.    Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

127.    Defendant St. Louis County receives federal financial assistance.

128.    Indeed, upon information and belief, St. Louis County received federal financial assistance at all times relevant for St. Louis County's MAT program.

129.    All individual defendants were, at all times relevant, employees or agents of St. Louis County.

130.    By refusing to provide medically necessary treatment for Plaintiff's son's disability, Defendants violated Section 504 of the Rehabilitation Act and was the proximate cause of Mr. Williams' pain, suffering and death.

131.    The Defendants' failure to accommodate Mr. Williams' OUD disability was intentional or showed deliberate indifference to Mr. Williams' disability.

132.    Plaintiff and her son, Mr. Williams, suffered damages, including pain, suffering and death, as a direct result of this unlawful conduct.

**WHEREFORE**, Plaintiff Angie Davis respectfully prays that this Honorable Court enter judgement in her favor and against Defendant St. Louis County; award her compensatory and punitive damages; award her reasonable costs and attorneys' fees pursuant to 42 U.S.C. § 12205; Order *injunctive relief* requiring Defendant St. Louis County to enforce their MAT policies and require St. Louis County jail to promptly provide detainees with their current prescription medications and grant her any and all such other relief as this Court deems just and proper.

Dated: May 14, 2025

Respectfully submitted,

**PEDROLI LAW, LLC**

_____

Mark J. Pedroli, MBE 50787
**PEDROLI LAW, LLC**
7777 Bonhomme Ave, Suite 2100
Clayton, Missouri 63105
314.669.1817
314-789.7400 Fax

Mark@PedroliLaw.com

24