IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ANGIE LYNN DAVIS, individually and on behalf of DWIGHT WILLIAMS, deceased, | ) ) ) ) |
| Plaintiff, | ) Cause No. 4:25-cv-00695 ) ) |
| v. | ) ) |
| SAINT LOUIS COUNTY, et al., | ) ) |
| Defendants. | ) ) |

**PLAINTIFF'S RESPONSE TO DEFENDANTS'
ST. LOUIS COUNTY AND VALERIE NELSON'S MOTION TO DISMISS**

COMES NOW Plaintiff Angie Davis, by and through undersigned counsel, and in response to Defendants St. Louis County and Valerie Nelson ("defendants") motion to dismiss Counts I, II, III, IV, V, states as follows:

**Introduction**

Despite life's obstacles, decedent Dwight Williams ("Williams"), at 31, living with his mom, sought treatment and care for his Opioid Use Disorder ("OUD"). Williams was prescribed medication, Suboxone, to treat his OUD, a serious medical condition and recognized disability under federal law. *Plaintiff's Complaint*, ECF 1 at ¶20. However, Williams allegedly stole some socks and while in St. Louis County government custody, Williams was denied his prescribed medication and went into rapid withdrawal from Suboxone, depriving him of his life. Williams died from "cardiomyopathy exacerbated by opioid withdrawal." Id. at ¶1. Withdrawal from opioids like Williams' prescribed buprenorphine (Suboxone) comes with substantial risks of serious harm

1

and can be fatal.[1] Prescription Suboxone (containing buprenorphine, a partial opioid agonist[2]) can cause acute opioid withdrawal if abruptly discontinued.[3] Withholding prescription medication from someone with a diagnosed and recognized disability violated Mr. Williams' Fourteenth Amendment Constitutional Rights, as well as the Americans with Disabilities Act and the Rehabilitation Act. Williams' death as a result of deprivation of a prescription medication was predictable, preventable, and part of a pattern of at least twenty (20) deaths related to OUD withdrawal over eight years. Id. at ¶¶56-58. Defendants' motion mischaracterizes Plaintiff's well-pled allegations as "conclusory." However, Plaintiff's allegations are the culmination of years of investigation into, *inter alia*, St. Louis County's policies and practices, internal St. Louis County emails, documents, whistleblower communications, and other well-pled and startling facts of institutional dysfunction. When read as a whole, Plaintiff's Complaint makes specific and detailed allegations that states a plausible deliberate indifference claim under *Farmer v. Brennan*, 511 U.S. 825 (1994), supports Monell liability pursuant to *City of Canton v. Harris*, 489 U.S. 378 (1989), and adequately alleges discrimination under the ADA and Rehabilitation Act. Accepting the allegations as true, as required at the Rule 12(b)(6) stage, the Court should deny Defendants' St. Louis County and Valerie Nelson's motion in its entirety.

---

[1] Darke, S., Larney, S., and Farrell, M. (2017) Yes, people can die from opiate withdrawal. *Addiction*, 112: 199–200. doi: https://doi.org/10.1111/add.13512

[2] SAMSHA: What is Buprenorphine? Side Effects, Treatment & Use
https://www.samhsa.gov/substance-use/treatment/options/buprenorphine

[3] Zweben, Joan E. PhD; Sorensen, James L. PhD; Shingle, Mallory BA; Blazes, Christopher K. MD. Discontinuing Methadone and Buprenorphine: A Review and Clinical Challenges. Journal of Addiction Medicine 15(6):p 454-460, November/December 2021. | DOI: 10.1097/ADM.0000000000000789
https://journals.lww.com/journaladdictionmedicine/fulltext/2021/12000/Discontinuing_Methadone_and_Buprenorphine__A.6.aspx

2

**Statement of Facts**

On May 15, 2020, thirty-one (31) year old Dwight Williams died in the custody of St. Louis County after being detained without being provided his prescription medication. Plaintiff's Complaint at ¶¶39-42. Prior to his death, Mr. Williams was living with his mother and was in active treatment for his OUD through *Assisted Recovery Centers of America* (herein after referred to as *"ARCA")*. Id. at ¶¶1, 16, 19-21, 39. Upon his arrival at St. Louis County Jail, Mr. Williams was on his prescribed Suboxone, a drug that was helping manage addiction that was prescribed to Mr. Williams through *ARCA*. Id. at ¶¶19, 21-23, 33, 35-36. St. Louis County and Defendant Nelson's actual knowledge that Mr. Williams was undergoing voluntary treatment for his addiction and had an active prescription for Suboxone constituted a serious medical need. Id. at ¶¶19, 79-80. St. Louis County, their supervisors, and individual defendants were deliberately indifferent to Mr. Williams' serious medical needs. Id. at ¶¶80-82. This was despite Defendants' knowledge of previous deaths at the jail as a result of detainees abruptly ending their course of medication or related to Opioid Use Disorder (*herein after referred to as "OUD"*). Id. at ¶¶2, 58-60. Defendant St. Louis County enacted inadequate policies and did not train, supervise or discipline its employees to ensure existing prescription medication distribution policies were complied with and close supervision of patients were followed. Id. at ¶44-48. St. Louis County and Defendant Nelson were further aware of complications when abruptly stopping medication like Suboxone. Id. at ¶17. Mr. Williams died shortly after his incarceration when Defendants failed to provide his prescription medication[4]. Id. at ¶46. The St. Louis County medical examiner found Mr. Williams'

---

[4] A National Institute of Health article found that "Opioid withdrawal syndrome is a life-threatening condition resulting from opioid dependence." https://www.ncbi.nlm.nih.gov/books/NBK526012/

3

cause of death was cardiomyopathy "exacerbated by opioid withdrawal", therefore directly relateing to defendants ceasing Mr. Williams' prescribed treatment. Id. at ¶41-42.

Prior to his arrest for the petty theft of five pairs of socks, Mr. Williams was being treated for addiction, and his doctor prescribed Mr. Williams Suboxone, a synthetic opioid prescribed to treat OUD, which Mr. Williams was taking. Id. at ¶16. Suboxone (buprenorphine) withdrawal mimics and can be more severe than that of other opioids, and when Suboxone is discontinued abruptly or "cold turkey," complications can include but are not limited to changes in blood pressure, dehydration, and heart failure. Id. at ¶17. St. Louis County and all Defendants knew that Mr. Williams had a confirmed buprenorphine prescription of Suboxone. Id. at ¶19. Mr. Williams had a medical diagnosis of opioid use disorder (OUD) and was actively receiving prescribed Medication Assisted Treatment (MAT) in the form of Suboxone. This constitutes not only a serious medical need but also a disability under the ADA, 42 U.S.C. § 12102(1)(A). Id. at ¶20. Defendants were aware of Plaintiff's disability and medical need for prescribed Suboxone as part of ongoing MAT for OUD. Despite repeated requests, notifications, and medical documentation of Mr. Williams' prescription, Defendants failed to provide Mr. Williams' doctor ordered and medically necessary treatment during his detention, resulting in unnecessary severe withdrawal, pain, suffering and death. Id. at ¶21. Despite being notified of Mr. Williams' diagnosis, serious medical need, and prescription, Defendants Nelson and St. Louis County officials refused to provide Suboxone and instead provided him Clonidine, not an equivalent treatment or even an FDA approved treatment for OUD, but instead merely a blood pressure medication. Id. at ¶22. On May 15, 2020, at approximately 11:30 p.m., correctional officer Vilmer escorted Mr. William to his cell and it was obvious and known to correctional officer Vilmer that Mr. Williams was experiencing acute withdrawal or OUD. Id. at ¶37. It was also obvious to Mr. Williams's cellmate Joshua

4

Murray that Mr. Williams was experiencing acute withdrawal or OUD. Id. at ¶38. After a night of pain, suffering and acute withdrawals from the jail's failure to provide Mr. Williams with his prescription medication, at approximately 6:20 a.m. on May 15, Mr. Williams was found unresponsive in his cell. Id. at ¶39. Mr. Williams was pronounced dead at 6:48 a.m. on May 15, 2020, at thirty-one (31) years old. Id. at ¶40.

Defendants had long-standing notice of the risks and consequences of abrupt withdrawal and systemic failures in MAT at the jail. Whistleblowers warned that detainees' constitutional rights were violated (as were County policies and the ADA) as detainees with prescribed medication and a recognized disability were "forced to go through withdrawal from their [prescription] medication." Id. at ¶3. Additionally, internal emails and a March 2014 quality control document called a Plan-Do-Check-Act ("PDCA") acknowledged the jail's widespread and pervasive failures to distribute prescribed medications, and supervisors testified about their notice of these systemic failures and knowledge of the serious medical risks it posed, including repeated deaths in the jail involving acute withdrawal. Id. at ¶¶2-3, 51-67. The St. Louis County medical examiner's report determined Mr. Williams's cause of death to be cardiomyopathy exacerbated by opioid withdrawal. Id. at ¶41. The sudden cessation of Mr. Williams' prescription medication and the failure to provide Mr. Williams with his prescription medication caused Mr. Williams' death. Id. at ¶42. Even though Defendants and the jail's medical staff knew and/or should have known of Mr. Williams's serious need for medical attention, including the distribution of his prescribed medication, they failed to provide him with his medication, or with adequate and timely medical care, including but not limited to providing Suboxone to Mr. Williams to prevent withdrawal complications, and/or ensuring the close monitoring of Mr. Williams, now with the further complication of infection and following the administration of antibiotics and the off label use of

5

Clonidine. Id. at ¶43. Defendants intentionally, willfully, maliciously, and while acting under the color of state law, showed a deliberate indifference to Mr. Williams' escalating medical needs; Defendants had actual knowledge of his serious medical need, his current prescription for medication to treat OUD and his infection and were deliberately indifferent to his need for his prescription medication and close monitoring. Id. at ¶44. Despite all of the above conditions, Mr. Williams wasn't sent to a hospital, to see a doctor, or even to the jail infirmary. Id. at ¶45. Instead, Mr. Williams was found fit for confinement and dispatched to a regular jail cell where he suffered acute Suboxone withdrawal all night and died. Id. at ¶46.

## Legal Standard

To survive a motion to dismiss, a complaint must allege facts sufficient "to state a claim to relief that is plausible on its face." Bell Atlantic v. Twombly, 550 U.S. 544, 570 (2007). The court must liberally construe a complaint in favor of the plaintiff. See Huggins v. FedEx Ground Package Sys., Inc., 592 F.3d 853, 862 (8th Cir. 2010). As such, "[t]he factual allegations of a complaint are assumed true and construed in favor of the plaintiff, 'even if it strikes a savvy judge that actual proof of those facts is improbable.'" Twombly, 550 U.S. at 556. Thus, "a motion to dismiss a complaint should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle the plaintiff to relief." Coleman v. Watt, 40 F.3d 255, 258 (8th Cir. 1994)). And, as recognized by the Eighth Circuit, pleading § 1983 claims against individual defendants is subject only to the "simplified" notice pleading requirements as provided in FED. R. CIV. P. 8(a). Doe v. Cassel, 403 F.3d 986, 989 (8th Cir. 2005)("We now recognize Edgington's heightened pleading requirement in § 1983 suits against individual defendants has been abrogated. The only permissible heightened pleading requirements in civil suits are those contained in the Federal Rules of Civil Procedure or those in federal statutes enacted by Congress." (referencing

6

Edgington v. Mo. Dep't of Corr., 52 F.3d 777, 779 n. 3 (8th Cir.1995) and citing Swierkiewicz v. Sorema N.A.,534 U.S. 506, 513 (2002)).

**Legal Argument**

I.   **Plaintiff Davis Has Adequately and Sufficiently Pleaded Her 28 U.S.C. § 1983 Claims (Count I, II and III) Against Defendants St. Louis County and Valerie Nelson, for Violations of Dwight Williams' constitutional rights.**

Plaintiff Angie Davis has here brought claims, *inter alia*, for Defendants' violations of her son decedent Dwight Williams' Fourteenth Amendment rights. Defendants St. Louis County and Valerie Nelson also argue that Counts I, II and III must be dismissed against these defendants.

As described below, Plaintiff has met her initial pleading burdens with respect to these claims. Plaintiff's Complaint adequately alleges facts that show the direct participation and/or supervisory liability of each named defendant. Plaintiff's Complaint ¶¶ 1, 16–21, 28–36, 42–44, 51–67. Moreover, Defendants' cited cases are distinguishable from the case at hand. Defendants cite Ball-Bey v. Chandler, which involved a single shooting and lacked factual allegations about training; here, by contrast, Plaintiff pleaded multiple deaths, Plan-Do-Check-Act ("PDCA") documents identifying the pattern of failure to distribute medication at the jail, documentation, internal emails, supervisor testimony, and whistleblower claims. Id. at ¶¶51–67. Plaintiff's Complaint offers far more than bare assertions, conclusions and threadbare recitals; Plaintiff's complaint offers highly-detailed and starling facts demonstrating institutional indifference to a decade long failure to provide detainees their prescription medication allegations that, if taken as true, support the contention that Defendants had actual knowledge of Williams' serious medical need and were deliberately indifferent to it. Plaintiff's Complaint at ¶¶16–23, 33–44, 47–52, 53–67, 70–72, 101–107. From any perspective, Plaintiff's allegations are plausible, disturbing and compelling.

1.   *Plaintiff has plausibly pleaded her Count I for Deliberate Indifference to Serious Medical Needs*

7

Defendant Nelson moves to dismiss Count I claiming Plaintiff fails to plead Defendant Nelson knew of and disregarded Williams' serious medical need. However, Plaintiff's complaint is rich with factual allegations that meet and exceed the plausibility standard of the objective and subjective standards. Williams had a known prescription medication and recognized serious medical need. Id. at ¶¶ 1, 16–21, 78. Defendant Nelson, a supervisor of the Medication Assisted Treatment ("MAT") program responsible for distribution of doctor ordered prescription medication, as alleged, knew of Williams' prescription needs and medical conditions but didn't provide Williams his medication. Id. at ¶¶ 19–21, 22-24, 28–36, 42-44, 69–73, 80, 82. Williams experienced acute withdrawal from his prescription medication and died. Id. at ¶¶ 37–42, 91–92. While defendants spent much of their argument claiming Defendant Nelson did not have actual knowledge of or involvement in the care of Williams, Plaintiff sufficiently pleaded that Defendant Nelson knew, from MAT notification during intake that Williams had a Suboxone prescription. Id. at ¶¶ 80-82. Plaintiff also pleaded, in the alternative, that Defendant Nelson should have known of Mr. Williams' serious medical need, but that alternative pleading does not undermine the pleading that Defendant Nelson was aware of and deliberately disregarded Williams' serious medical need. Despite knowing that Williams had a suboxone prescription, Nelson and the MAT program failed to verify and ensure the distribution of prescribed suboxone. Discovery will further establish the extent of Defendant Nelson's involvement in Mr. Williams' care, as alleged. Plaintiff met her burden to show Williams was suffering from an objectively serious medical need to which Defendants were deliberately indifferent. The Eighth Circuit has defined an "objectively serious medical need" as one which "has been diagnosed as a physician as requiring treatment, or *one* that is so obvious that even a layperson would easily recognize the need for medical attention." Presson, *Order* at \*10-11 (citing Davis v. Buchanan Cnty., 11 F.4th 604, 623-624 (8th Cir. 2021)(quoting

Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir. 1995)). Moreover, "medical conditions need not be emergencies in order to be considered serious." See Hancock v. Arnott, Case No. 6:18-cv-03170-MDH, *Order*, at * 15 (W.D. Mo. Mar. 30, 2021) (citing Roe v. Crawford, 514 F.3d 789, 801, n. 9 (8th Cir. 2008)).

2. ***Plaintiff has plausibly pleaded her Count II for failure to train, supervise and discipline against Defendants St. Louis County and Nelson***

Plaintiff has satisfied her pleading requirements to state a plausible claim against Defendants St. Louis County and Valerie Nelson for her Count II for *failure to train, supervise, or discipline*. Defendants St. Louis County and Nelson knew since at least March 2014 that detainees were routinely denied OUD medications. Id. at ¶¶ 53–61. Plaintiff specifically pleaded these facts including pleading internal acknowledgments or admissions, alleging internal whistleblower complaints and even an uncompleted plan to address this custom and practice of failing to provide medication. Id. at ¶¶ 54–55, 59, 61. As pleaded nurses also testified that this pattern of failure to deliver medication was pervasive and persisted from 2014 to at least 2023. Id at ¶¶ 63–67. As a County supervisor, as alleged, Defendant Nelson supervised the Medication Assisted Treatment ("MAT") program and was responsible for ensuring detainees received, *inter alia*, their prescribed Suboxone medication. Id. at ¶¶13, 69-72, 100–107. Defendants St. Louis County and Valerie Nelson knew of their and their subordinates' failure to provide pretrial detainees their prescribed medication and, as Plaintiff has pleaded, did not discipline or supervise them to ensure that the pattern would not continue. The lack of training, supervision or discipline caused or was the moving force behind Williams' injury and death. Id. at ¶¶ 106–110, 115, 117.

Plaintiff plead the multitude of ways that Defendants St. Louis County and Defendant Nelson failed to train, supervise, or discipline St. Louis County Employees and subordinates, when she stated "Defendants St. Louis County, Dr. Davis, Valerie Nelson, and Lisa Maxwell's

9

inadequate policies, procedures, customs, practices and actions – as well as their inadequate training, supervision and discipline permitted failures, including but not limited to: failure to ensure that inmates experiencing withdrawal would be properly provided their prescription medication, properly monitored, failure to ensure that medications were tapered off of rather than abruptly ceased, failure to ensure nurse practitioners reviewed all potential drug interactions prior to their prescription, and an overall failure to ensure that patients receive the proper observation commensurate with their symptoms, deprived Mr. Williams of his constitutional rights.". Id. at ¶107. Allegations in Plaintiff's Complaint are not speculative and are confirmed by documented complaints, supervisor testimony, internal emails, the PDCA, the fact the problem identified in the PDCA was never resolved and continued for nearly a decade to William's death. Id. at ¶¶ 51-67. Specifically, the Complaint includes pleadings that in testimony from a prior acute withdrawal syndrome jail death case; former nurse manager Rita Hendrix acknowledged that acute withdrawal is a serious medical condition that caused or contributed to cause more than twenty (20) deaths at the St. Louis County jail in the eight years prior to 2015. Id. at  ¶58. Finally, as described in detail above, Defendant St. Louis County's training and Valerie Nelson's supervisory deficiencies were the direct and proximate cause and moving force behind Williams' injuries. As outlined in Jennings v. Wentzville R-IV School Dist., 397 F.3d 1118 (8th Cir. 2005), Defendant St. Louis County and Valerie Nelson were on notice of the pervasive problem of inmates not receiving their prescribed medication.

A municipality can be liable for a failure to train or supervise under §1983 instances "where the failure to train [or supervise] amounts to deliberate indifference to the rights of persons with whom the police came into contact." City of Canton, Ohio v. Harris, 489 U.S. 378, 388 (1989). To state such a claim for relief, the plaintiff must plead sufficient facts demonstrating: "(1) the training

10

and supervision practices were inadequate, (2) the [defendant governmental entity] was deliberately indifferent to the rights of others in adopting the training and supervision policies and practices, and (3) the alleged training and supervisory deficiencies caused the constitutional depravations." Id. (citing Ulrich v. Pope County, 715 F,.3d. 1054, 1061 (8th. Cir. 2013)). Moreover, deliberate indifference and notice "may be implied when (1) the failure to train is so likely to result in a constitutional violation that the need for training is *patently obvious*, or (2) a pattern of misconduct indicates that [the defendants'] *responses to a regularly recurring situation are insufficient* to protect the students' constitutional rights." See Jennings v. Wentzville R-IV School Dist., 397 F.3d 1118 (8th Cir. 2005). Finally, at the pleading stage, the liberal requirements of Fed. R. Civ. P. 8 merely requires "a short and plain statement of the claim showing that the pleader is entitled to relief" and that "pleadings shall be so construed as to do substantial justice."

3. ***Plaintiff has plausibly pleaded her Count III for unconstitutional custom against St. Louis County***

Plaintiff incorporated her arguments made in Count II to support her allegations made in Count III, as they provide a similar baseline for her claims of widespread practice and notice. For the same reasons, Plaintiff has satisfied his pleading requirements to state a claim against Defendant St. Louis County for unconstitutional custom. As alleged by Plaintiff, Defendant St. Louis County knew of the custom of not providing detainees their prescribed medication back in at least March 2014, and because of said knowledge created a PDCA ("Plan-Do-Check-Act") to address the issue but this was never completed according to the testimony of former nurse manager Rita Hendrix and the pattern of failure to distribute prescribed medication continued for another nearly ten years, and still persisted in 2023, according to former nurse manager Faye Sweeney. Plaintiff's Complaint at ¶¶54-55, 58-61, 63-67. Plaintiff pleaded continued knowledge of Defendant St. Louis County pattern to not give prescribed medications to detainees through the allegation of internal

11

emails that demonstrated knowledge of the custom. Id. at ¶¶55–57. Plaintiff, although not required to plead that these actions violated internal policies, also did so, as further evidence of knowledge, notice, and unconstitutional custom. For example, although Corrections Medicine Policy CM-69 mandated the distribution of medication, including Suboxone, St. Louis County's custom was to disregard this policy. Id at. ¶¶ 18, 66–67, 73–74. Finally, Plaintiff pleaded that Defendant St. Louis County's unconstitutional custom was the moving force behind Williams' injury and death. Id at. ¶¶ 115–119.

Municipalities may be liable under § 1983 for an unofficial custom when the "constitutional deprivations [are] visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision-making channels." Monell v. Dept. of Soc. Servs. Of City of New York, 436 U.S. 648, 690-91 (1978). In order to plead such a claim, the plaintiff must allege sufficient facts with respect to: "(1) the existence of a continuing, widespread persistent pattern of unconstitutional misconduct; (2) deliberate indifference to or tacit authorization of such conduct by policy making officials after they have notice of the conduct; and (3) that the municipality's custom was the moving force behind the constitutional violation." Baude, "4:18-CV-1564-RWS, *Memorandum and Order* at * 12-13 (citing Johnson v. Douglas Cty. Med. Dep't, 725 F.3d. 825, 828 (8th. Cir. 2013); Laney v. City of St. Louis, No. 4:18-CV-01575-CDP, 2019 WL 2423308 (E.D. Mo June 10, 2019)).

Moreover, "[t]o sufficiently plead the existence of an unconstitutional custom or policy, a plaintiff need not specifically plead the existence of such policy or custom but instead plead sufficient facts supporting that such an unconstitutional policy or custom exists." Perry v. St. Louis County, Cause No. 4:22-cv-00140-MTS, *Doc. # 36*, *Memorandum and Order*, * 15, fn. 12 (E.D. Mo. July 25, 2022)(citing Crumpley-Patterson v. Trinity Lutheran Hosp., 388 F.3d 588, 591 (8th

12

Cir. 2004); Doe ex rel. Doe v. Sch. Dist. of City of Norfolk, 340 F.3d 605, 614 (8th Cir. 2003)); See also Baude, Cause No. 4:18-cv-01564-RWS at * 13 ("[t]he plaintiff need not identify the specific policy or custom that caused the constitutional violation.")(citing Crumpley-Patterson, 388 F.3d. at 591 ("a complaint is not deficient because [the plaintiff] failed to incorporate language specifically alleging the existence of an unconstitutional policy or custom")(cleaned up)(emphasis added). Instead, the plaintiff must merely "allege *facts sufficient to support an inference* that the conduct complained of resulted from the existence of an unconstitutional policy or custom." Id. (emphasis added) Indeed, at the pleading stage, "a plaintiff may not be privy to the facts necessary to accurately describe or identify any policies or customs which may have caused the deprivation of a constitutional right." Crumpley-Patterson, 388 F.3d at 591. And, to require such precision "accuracy" as suggested by Defendants at the pleading stage would "disregard the liberality of FED. R. CIV. P. 8(a)(2) which requires merely 'a short and plain statement of the claim showing that the pleader is entitled to relief," and 8(f), which states 'pleadings shall be so construed as to do substantial justice.'" Id.

### Defendant Nelson should be denied Qualified Immunity on Count 1

Also, in seeking dismissal of Plaintiff's Count I, Defendant Nelson also attempts to do so based upon assertions of qualified immunity. Defendant Nelson does not appear here to challenge the fact that Mr. Williams' right to adequate medical care was clearly established at the time of his illness and death in May 2020. Nor can they. Indeed, the right of pre-trial detainees, to adequate medical care (including their prescribed medications) while in custody was clear and well-established prior to and at the time of Mr. Williams' in-custody death after being denied physician-ordered prescription medication. *See* Dadd v. Anoka Cnty., 827 F.3d 749, 756 (8th Cir. 2016)("It is clear that a pretrial detainee has a constitutional right to adequate medical care while in

custody.")(citing West v. Atkins, 487 U.S. 42, 55 (1988)). See also Estelle v. Gamble, 429 U.S. 97, 104–05; McRaven v. Sanders, 577 F.3d 974, 981 (8th Cir. 2009). Establishing qualified immunity at the motion-to-dismiss stage is difficult: "As we have repeatedly cautioned, 'it is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified imm*unity*. Although an officer's 'entitlement to qualified immunity is a threshold question to be resolved at the earliest possible point,' that point is usually summary judgment and not dismissal under Rule 12.'" Anders v. Cuevas, 2021 WL 70029, at *5 (6th Cir. Jan. 8, 2021). *See also* **"How Qualified Immunity Fails,"** Joanna C. Schwartz, 127 YALE L.J. 2,10 (2017) (reporting that just 0.6 % of Section 1983 claims were dismissed on qualified immunity grounds at the motion-to-dismiss stage).

Appellate courts have articulated strong reasons why determinations of qualified immunity are best left for summary judgment. Jacobs v. City of Chicago, 215 F.3d 758, 765 fn. 3 (7th Cir. 2000)("We note that the dismissal of a sec. 1983 suit under Rule 12(b)(6) is a delicate matter that district courts should approach carefully."; Peterson v. Jensen, 371 F.3d 1199, 1201(10th Cir. 2004)("Asserting a qualified immunity defense via a Rule 12(b)(6) motion, however, subjects the defendant to a more challenging standard of review than would apply on summary judgment.")(citation omitted). Moreover, as Judge Easterbrook has explained:

> "In Gomez the Supreme Court distinguished immunity from failure to state a claim on which relief may be granted. "By the plain terms of sec.1983, two-- and only two-- allegations are required in order to state a cause of action under that statute. First, the plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who has deprived him of that right acted under color of state or territorial law." Gomez v. Toledo, 446 U.S. 635, 640 (1980). The complaint in Gomez contained both allegations, and the Court therefore reversed an order dismissing it under Rule 12(b)(6). Crawford-El v. Britton, 523 U.S. 574 (1998), has since insisted that courts not alter the elements or burdens under sec.1983 in the name of immunity. Cf. Leatherman v. Tarrant County, 507 U.S. 163 (1993)(no "heightened pleading

standard" in sec.1983 cases). Any contrary decisions in this circuit cannot be reconciled with the instructions from the Supreme Court, and we should face up to this rather than say, as my colleagues do, that the use of Rule 12(b)(6) in immunity situations is a "delicate matter that district courts should approach carefully." - Jacobs v. City of Chicago, 215 F.3d at 774-75 (Easterbrook, J.)(concurring). "Rule 12(b)(6) is a mismatch for immunity and almost always a bad ground of dismissal." Id. at 775.

## II.  Counts IV and V - ADA and Rehabilitation Act Claims

Plaintiff does not oppose the dismissal of Defendant Nelson without prejudice from only Counts IV and V. St. Louis County's responses to Counts IV and V rely on and refer to the same arguments, and thus Plaintiff grouped these two counts for the purpose of responding to St. Louis County's motion to dismiss counts IV (ADA) and V (Rehabilitation Act). Mr. Williams had been diagnosed with Opioid Use Disorder (OUD), which is a recognized disability. Plaintiff's Complaint, ECF 1 at ¶1, 16, 20-21, 120-121. Moreover, Defendants were aware of such disability and the prescribed mediation he had been taking to treat his OUD and denied his medication. Id. at ¶¶21-22, 121-125, 127-132. Defendant St. Louis County argues that the ADA and § 504 of the Rehabilitation Act do not apply to persons "currently engaging in the illegal use of drugs" because they are excluded from the definition of disability under federal law. Plaintiff's pleadings make no mention of illegal drug use, and St. Louis County's response alleging such runs outside the pleadings and admittedly by "implication". *Defendant's Memorandum* at 13. Defendants' argument is inappropriate at the motion to dismiss stage.

## Conclusion

Plaintiff's Complaint contains specific factual allegations, not mere conclusions, that, if taken as true, are more than plausible and would entitle Plaintiff to relief on each count. Defendants St. Louis County and Valerie Nelson's motion should be denied in its entirety.

15

Dated: August 26, 2025

                                          Respectfully submitted,

                                          */s/ Mark J. Pedroli*

                                          Mark J. Pedroli, MBE 50787
                                          **PEDROLI LAW, LLC**
                                          7777 Bonhomme Ave, Suite 2100
                                          Clayton, Missouri 63105
                                          314.669.1817
                                          Mark@PedroliLaw.com
                                          **ATTORNEY FOR PLAINTIFF**

**Certificate of Service**

The undersigned hereby certifies that, on August 26, 2025, a true and accurate copy of the foregoing was filed with the Clerk of this Court through the Court's electronic filing system and thereby served on all counsel of record for the parties via operation of that system.

                                                                               */s/ Mark J. Pedroli*