**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| ANGIE DAVIS, | ) |
| | ) |
| Plaintiff, | ) |
| v. | )   No. 4:25-cv-00695-SEP |
| | ) |
| ST. LOUIS COUNTY, MISSOURI, et al, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

Before the Court are the motions to dismiss filed by Defendants David Dooley, Janie Stephens, Kelly Wilkens, Valerie Nelson, Dawn Davis, Lisa Maxwell, and St. Louis County, Docs. [11], [22], [31], [43].  The Motions are fully briefed and ready for disposition.  For the reasons set forth below, the Motions are granted in part and denied in part.

### FACTS AND BACKGROUND[1]

On May 15, 2020, Plaintiff Angie Davis's son, Dwight Williams ("Williams"), died while in custody at the St. Louis County Jail.  Doc. [1] ¶ 1.  On May 14th, Williams was arrested and transported to the St. Louis County Jail.[2]  *Id.* ¶¶ 16, 37.  During his medical intake at the jail, Williams reported "a history of addiction and his prescription use of Suboxone to treat addiction to intake nurse Defendant David Dooley and Defendant Janie Stephens, as well as a recent incision and drainage procedure on his left hand," which appeared infected.  *Id.* ¶¶ 28-29.  Williams told Defendant Kelly Wilkens that he had been admitted to a hospital "to receive intravenous antibiotics for three (3) days" a week prior to his arrest, and that he was expected to return on May 15 to have a Penrose drain removed. *Id.* ¶ 30.  Wilkens "examined [Williams's] hand, removed [the] Penrose drain that had been placed in it during his incision and drainage operation, . . . and provided [Williams] . . . an

---

[1] For the purposes of the motions to dismiss, the Court assumes that the factual allegations in the Complaint are true.  *See Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989).

[2] Plaintiff's Complaint states that, while Williams was pronounced dead at 6:48 a.m. on May 15, 2020, Doc. [1] ¶ 40, he was escorted to his cell following his admittance to the jail on May 15 at approximately 11:30 p.m., *id.* ¶ 37.  While not relevant to the issues decided in this motion, the Court will assume that Plaintiff has correctly identified the date of Williams's death and infer that his intake took place the evening of May 14, 2020.

antibiotic . . . [and] an anti-inflammatory." *Id.* ¶ 32.  Following Wilken's treatment, "Dooley continued his intake examination," determined that Williams was experiencing acute withdrawal, and "provided Williams Clonidine, Loperamide, and Promethazine pursuant to Dr. Davis's physician's standing order." *Id.* ¶ 33.  "Stephens also knew and noted the fact that [Williams] was prescribed Suboxone by his doctor," but neither Stephens nor Dooley gave Williams Suboxone. *Id.* ¶¶ 35-36.  Following his intake examination, Williams was escorted to his cell at approximately 11:30 pm. *Id.* ¶ 37.  Plaintiff alleges that it was "obvious" to both the correction officer who escorted Williams and his cellmate that Williams "was experiencing acute withdrawal or OUD." *Id.* ¶¶ 37-38.  Plaintiff provided no additional information as to any specific symptoms that Williams was exhibiting or the severity of those symptoms.

On May 15 at 6:20 a.m., Williams was found unresponsive in his cell, and at 6:48 a.m. he was declared dead. *Id.* ¶¶ 39-40.  "The St. Louis County medical examiner's report determined [Williams's] cause of death to be cardiomyopathy exacerbated by opioid withdrawal." *Id.* ¶ 41.  Plaintiff alleges that "[t]he sudden cessation of . . . Williams's prescription medication and the failure to provide . . . Williams with his prescription medication led to acute withdrawals that caused . . . Williams's death." *Id.* ¶ 42.

Plaintiff's Complaint asserts claims against St. Louis County; nurse practitioner Wilkens; registered nurse Dooley; Stephens; Chief Operating Officer of St. Louis County's Correction Medicine Valerie Nelson, who was "responsible for supervising nurses and . . . the Medication Assisted Treatment ("MAT") program"; Dr. Dawn Davis, the lead physician at the St. Louis County Jail; and nurse manager Lisa Maxwell, who was "directly responsible for training St. Louis County employees at the jail to administer the [MAT] program" (collectively "Defendants"). *Id.* ¶¶ 8-13.  The individual defendants were named in their individual capacities only. *Id.* ¶¶ 9-14.

Plaintiff alleges that the individual defendants violated Williams's Eighth and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983 by acting with deliberate indifference to his serious medical needs (Count I).  Doc. [1] ¶¶ 77-94.  Plaintiff further alleges that Defendants St. Louis County, Nelson, Dr. Davis, and Maxwell (the "Supervisory Defendants") failed to train, supervise, and discipline medical staff at the jail "to ensure that patients would receive appropriate care," including prescribed medication (Count II). *Id.*

2

¶¶ 95-112.  Plaintiff also alleges that the County knew about and allowed an "unconstitutional custom and/or practice to ignore obvious signs of a severe medical condition and not provide appropriate, adequate medical treatment, including but not limited to providing detainees their prescribed medications" (Count III).  *Id.* ¶¶ 113-19. Lastly, Plaintiff alleges that all Defendants violated the Americans with Disabilities Act (ADA), 42 U.S.C. § 12132, and the Rehabilitation Act of 1973 (RA), 29 U.S.C. § 794(a), by "failing to accommodate [Willaims's] disability . . . [b]y refusing to provide medically necessary treatment," (Counts IV and V).  *Id.* ¶¶ 120-32.

Defendants move to dismiss.  Docs. [11], [22], [31], [43].  Defendant Maxwell moves to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(5) and 4(m), arguing that Plaintiff's service of process was deficient and that she was served more than 90 days after the Complaint was filed.  Doc. [31].  St. Louis County and the other individual defendants argue that the case should be dismissed for failure to state a claim.  Docs. [11], [22], [43]. Plaintiff opposes the motions, arguing:  (1) that Maxwell waived her affirmative defense pursuant to Rule 12(h)(1), Doc. [35]; and (2) that the Complaint alleged facts sufficient to state claims against the other defendants, Docs. [18], [25], [45].

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim for "failure to state a claim upon which relief can be granted."  The notice pleading standard of Federal Rule of Civil Procedure 8(a)(2) requires a plaintiff to give "a short and plain statement . . . showing that the pleader is entitled to relief."  To meet this standard and survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Determining if well-pled factual allegations "plausibly give rise to an entitlement to relief" is a "context-specific task" requiring the court to "draw on its judicial experience and common sense."  *Id.* at 679.  The factual content of the plaintiff's allegations must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Park Irmat Drug Corp. v. Express Scripts Holding Co.*, 911 F.3d 505, 512 (8th Cir.

2018) (quoting *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012)).  In determining the plausibility of a plaintiff's claim, *Iqbal* and *Twombly* instruct the Court to consider whether "obvious alternative explanations" exist for the allegedly unconstitutional conduct.  *Iqbal*, 556 U.S. at 682 (quoting *Twombly*, 550 U.S. at 567).  The Court must then determine whether the plaintiff alleges a violation of the law.  *Iqbal*, 556 U.S. at 679.  The well-pled facts must establish more than a "mere possibility of misconduct."  *Id.*

When ruling on a motion to dismiss, a court "must liberally construe a complaint in favor of the plaintiff," *Huggins v. FedEx Ground Package Sys., Inc.*, 592 F.3d 853 (8th Cir. 2010), and "grant all reasonable inferences in favor of the nonmoving party," *Lustgraaf v. Behrens*, 619 F.3d 867, 873 (8th Cir. 2010).  But if a claim fails to allege one of the elements necessary to recovery on a legal theory, the Court must dismiss that claim for failure to state a claim upon which relief can be granted.  *Crest Contr. II, Inc. v. Doe*, 660 F.3d 346, 355 (8th Cir. 2011).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).  Although courts must accept all well-pled factual allegations as true, they "are not bound to accept as true a legal conclusion couched as a factual allegation."  *Id.* (quoting *Twombly*, 550 U.S. at 555).

## DISCUSSION

## I.   Count I:  Failure to Provide Adequate Medical Care

At all times relevant to the Complaint, Williams was a pretrial detainee, so his constitutional claims are brought pursuant to the protections of the Fourteenth Amendment.  *See Morris v. Zefferi*, 601 f.3d 805, 809 (8th Cir. 2010).  But a pretrial detainee's medical claims are analyzed under the Eighth Amendment's deliberate indifference standard.  *See Grayson v. Ross*, 454 F.3d 802, 808 (8th Cir. 2006); *see also Morris v. Cradduck*, 954 F.3d 1055, 1058 (8th Cir. 2020) (a pretrial detainee has the same rights to medical care under the due process clause as an inmate has under the Eighth Amendment).  Under the Eighth Amendment, the government has an obligation to provide adequate medical care to incarcerated individuals.  *Estelle v. Gamble*, 429 U.S. 97, 103 (1976).  A deliberate indifference claim "has both an objective and subjective component."  *McRaven v. Sanders*, 577 F.3d 974, 980 (8th Cir. 2009) (quoting *Vaughn v. Gray*, 557 F.3d 904, 908 (8th Cir. 2009)).  "The objective component requires a plaintiff to demonstrate an

4

objectively serious medical need"; "the subjective component requires a plaintiff to show that the defendant actually knew of, but deliberately disregarded, such need." *Id.* (quoting *Vaughn*, 557 F.3d at 908).

"A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Holden v. Hirner*, 663 F.3d 336, 342 (8th Cir. 2011) (quoting *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997)). The subjective component—whether a defendant was deliberately indifferent to a serious medical need—requires more than mere negligence. Rather, it requires a state of mind similar to criminal recklessness *Nur v. Olmsted Cnty.*, 563 F. Supp. 3d 946, 965 (D. Minn. 2021) (quoting *Barton v. Taber*, 820 F.3d 958, 965 (8th Cir. 2016)). "Such a mental state can be inferred from facts that demonstrate the response to the medical care was obviously inadequate" or by showing that a defendant "intentionally den[ied] or delay[ed] access to medical care or intentionally interfere[d] with prescribed treatment . . . ." *Id.* (citing *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976)).

Here, assuming all of Plaintiff's factual allegations to be true and drawing all reasonable inferences in his favor, Plaintiff has alleged facts sufficient to state a deliberate indifference claim under § 1983 against Defendants Dooley and Stephens. Plaintiff alleges that Williams reported "his prescription use of Suboxone to treat addiction to the intake nurse Defendant Dooley and Defendant Stephens"; that Dooley "determined that Mr. Wiliams was in acute withdrawal, but instead of providing Mr. Williams with his prescription medication, Suboxone, he provided Mr. Williams Clonidine, Loperamide, and Promethazine"; that Stephens "knew and noted the fact that Mr. Williams was prescribed Suboxone by his doctor through Assisted Recovery Centers of America"; and that "[n]either Defendant Dooley or Stephens ensured that Mr. Williams received his prescription Suboxone." Doc. [1] ¶¶ 28, 33-36. Such allegations are sufficient, at this stage, to state a claim that Williams's addiction and withdrawal was a serious medical need that had been "diagnosed by a physician as requiring treatment" and that Dooley and Stephens "intentionally interfere[d] with prescribed treatment."

Plaintiff fails to state a deliberate indifference claim under § 1983 against any other individual defendant. Plaintiff makes no specific allegations that any individual defendant,

5

with the exception of Dooley and Stephens, had actual knowledge of Plaintiff's serious medical need or his prescription for addiction treatment.  *See Holden*, 663 F.3d at 342; *Nur* 563 F. Supp. 3d at 965 .  While Plaintiff makes several conclusory statements alleging that "St. Louis County and all Defendants knew that Mr. Williams had a confirmed buprenorphine prescription of Suboxone" and that Defendants were aware of [Williams's] disability," *see, e.g.*, Doc. [1] ¶¶ 19, 21, he makes no specific allegations that Williams told any individuals other than Dooley and Stephens about his addiction treatment or that any other individual defendant actual reviewed his medical records prior to his death approximately eight hours after his intake at the jail.  *See Iqbal*, 556 U.S. at 678.  Similarly, while the Complaint states that Williams was suffering from acute withdrawal and that it was "obvious" to his cellmate and a correctional officer, such allegations are similarly conclusory, as they do not specifically state the symptoms Williams was exhibiting or their severity.  *Id.*; Doc. [1] ¶¶ 37-38.  Without additional information, the Court cannot infer whether any other individual defendant might have been deliberately indifferent to Williams's serious medical needs.  As such, Defendants' motions to dismiss Count I are denied as to Defendants Dooley and Stephens and granted as to the remaining individual defendants.

## II.      Count III:  Municipal Liability

"Section 1983 liability for a constitutional violation may attach to a municipality if the violation resulted from (1) an official municipal policy, (2) an unofficial custom; or (3) a deliberately indifferent failure to train or supervise." *Troupe v. Young*, 143 F.4th 955, 973 (8th Cir. 2025) (quoting *Corwin v. City of Independence*, 829 F.3d 695, 699 (8th Cir. 2016)). "To establish liability based on a custom, the plaintiff has to show the following:  (1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and (3) That . . . the custom was a moving force behind the constitutional violation." *Troupe*, 143 F.4th at 973 (citing *Johnson v. Douglas Cnty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013).  "Notice is the touchstone of deliberate indifference in the context of section 1983 municipal liability." *Atkinson v. City of Mtn. View, Mo.*, 709 F.3d 1201, 1216 (8th Cir. 2013).

Plaintiff's municipal custom claim must satisfy the same pleading standard as his individual capacity claims.  *Watkins v. City of St. Louis*, 102 F.4th 947, 953 (8th Cir. 2024) "Conclusory assertions that are unsupported by facts will not satisfy this pleading standard."  *Id.* .  In Count III, Plaintiff alleges that "Defendant St. Louis County had specific and detailed knowledge of a pervasive, widespread and well-known custom and practice of not providing OUD patients with their prescribed medications" and "ignor[ing] obvious signs of . . . serious medical notions and not provid[ing] appropriate, adequate medical treatment," and that such customs were the "moving force behind [Williams's] injury and death."  Doc. [1] ¶ 115-17.  In support of the claim, Plaintiff alleges that in March 2014, over six years before Williams's death, St. Louis County corrections officials "acknowledged a pattern of their nurses failing to distribute OUD medications."  *Id.* ¶ 53.  In response to the issue, "St. Louis County nurse managers created a PDCA ("Plan-Do-Check-Act"), a quality control process, to address [the County's] pervasive pattern of failures to treat detainees with [OUD], including the pervasive failure to provide detainees medication."  *Id.* ¶ 54.  Plaintiff alleges that the issue continued for years, ultimately resulting in Williams's death.  *Id.* ¶ 56.  He cites testimony provided by a "former long time Nurse Manager," who stated that acute withdrawal "caused or contributed to cause more than twenty (20) deaths at the St. Louis County jail in the eight years prior to 2015," but that the "2014 PDCA acknowledging the medication distribution problem at the jail was never completed."  *Id.* ¶¶ 58-59.  And he states that another former nurse manager similarly testified that "the failure to provide Suboxone to detainee patients was a 'persistent problem' at the jail through at least 2023"; that "MAT eligible patients were frequently not being referred to the MAT program or provided with Suboxone"; and that "while the MAT policies were technically in force during May 2020, the *custom and practice . . .* was that MAT *was not being administered at all*."  *Id.* ¶¶ 63-67.

As an initial matter, the Court notes that the constitutional issue before it in this case is whether Defendants Dooley and Stephens violated Williams's Eighth and Fourteenth Amendment rights by denying him access to his prescribed Suboxone, not the appropriateness of alleged denials of specific medications to inmate patients generally.  *See Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997) ("[I]nmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain

7

free to exercise their independent medical judgment."). Plaintiff's allegations relating to the denial of Suboxone to the jail population are insufficient to sustain a § 1983 custom claim against the County. As it stands, the Court cannot determine the frequency, severity, or result of any deprivation of prescription medication for acute withdrawal. Despite Plaintiff's attempt to extrapolate from deprivations that allegedly took place "in the eight years prior to 2015," long before Williams's death, Doc. [1] ¶¶ 58, 60, Plaintiff has not "assert[ed] specific instances or provide[d] specific examples . . . that could support an inference of an unconstitutional policy or custom." *See Watkins v. City of St. Louis*, 102 F.4th 947, 954 (8th Cir. 2024). Because Plaintiff has failed to allege facts sufficient to state a custom claim under section 1983, Plaintiff's Count III against St. Louis County must be dismissed.

### III.    <u>Count II:  Supervisory Failure to Train, Supervise, or Discipline</u>

Plaintiff also claims that the Supervisory Defendants failed to train, supervise, or discipline their employees, resulting in Williams's death. Doc. [1] ¶¶ 95-112. "A municipality can be liable under [section 1983] for a failure to train or supervise its employees where: (1) the municipality's training practices are inadequate; (2) the municipality was deliberately indifferent to the rights of others in adopting those practices such that the failure to train reflects a deliberate or conscious choice by the municipality; and (3) an alleged deficiency in the municipality's training practices actually caused the plaintiff's constitutional deprivation." *Mitchell v. Saint Louis Cnty., Mo.*, 160 F.4th 950, 963 (8th Cir. 2025) (citing *Ulrich v. Pope Cnty.*, 715 F.3d 1054, 1061 (8th Cir. 2013). "To be deliberately indifferent, a municipality must have 'notice that its procedures were inadequate and likely to result in a constitutional violation.'" *Id.* (quoting *Andrews v. Fowler*, 98 F.3d 1069, 1076 (8th Cir. 1996).

Similarly, while supervisory officials cannot be held individually liable under Section 1983 for the constitutional violations of a subordinate on a respondeat superior theory, "a supervisor may be held liable 'if a failure to properly supervise and train [an] offending employee caused a deprivation of constitutional rights.'" *Troupe*, 143 F.4th at 972 (quoting *Tlamka v. Serrell*, 244 F.3d 628, 635 (8th Cir. 2001) (quoting *Andrews v. Fowler*, 98 F.3d 1069, 1078 (8th Cir. 1996))). "When a 'supervising official who had not direct participation in an alleged constitutional violation is sued for failure to train or supervise the offending

actor, the supervisor is entitled to qualified immunity unless plaintiff proves that the supervisor (1) received notice of a pattern of unconstitutional acts committed by a subordinate, and (2) was deliberately indifferent to or authorized those acts.'" *Davis v. Buchanan Cnty., Mo.*, 11 F.4th 604, 624 (8th Cir. 2021) (quoting *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015) (citing *Livers v. Schenck*, 700 F.3d 340, 355 (8th Cir. 2012))).  This "rigorous standard" requires proof that the "supervisor had notice of a pattern of conduct by the subordinate that violated a clearly established constitutional right." *Krigbaum*, 808 F.3d at 340.

Here, Plaintiff alleges that the Supervisory Defendants failed to properly train, supervise, or discipline their employees to "ensur[e] they provided detainees with their prescription medications and monitored detainees who presented under the treatment of an outside physician with OUD." Doc. [1] ¶ 105.  Plaintiff further alleges that:  "Defendant St. Louis County and Defendant Dr. Davis oversaw policies and procedures relevant to" the treatment of individuals "suffering from [Opioid Use Disorder ("OUD")]" like Williams, *id.* ¶¶ 100-01; the Supervisory Defendants "were responsible for training, supervision, and discipline related to the [Medication Assisted Treatment] program at the St. Louis County jail and ensuring that detainees received their prescription medication," *id.* ¶ 102; the Supervisory Defendants "failed to properly train the medical staff at the jail to ensure that patients would receive appropriate care, including their MAT and prescribed medication," *id.* ¶ 103; and the Supervisory Defendants "were also aware of a pervasive, widespread and well-known custom and practice of not providing OUD patients with their prescribed medications and Defendants St. Louis County and Dr. Davis were deliberately indifferent to this custom and practice," *id.* ¶¶ 73, 107.

As to notice, Plaintiff alleges that "[p]rior to [Williams's] death, Defendants St. Louis County, Dr. Davis, Nelson, and Maxwell knew that [OUD] was a serious medical need, and they also know that St. Louis County jail was failing to provide medical care to this patient population, including failing to provide detainees with their outside medical doctor's prescription and/or Suboxone." *Id.* ¶ 73.  In support, Plaintiff cites to the "testimony" of two former nurse managers, who allegedly stated that acute withdrawal had contributed to approximately 20 inmate deaths in the eight years preceding 2015, and that "failure to

provide Suboxone to detainee patients was a 'persistent problem' at the jail through at least 2023." *Id.* ¶¶ 57-67.

Plaintiff's allegations are insufficient to state a claim that Defendants had notice that their training program or supervisory standards were insufficient and were resulting in violations of inmates' constitutional rights. "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (quoting *Bd. Of Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 409 (1997); *see also Mitchell*, 160 F.4th at 962 (plaintiff must comply with "requirement of alleging—with enough factual matter— that [supervisory defendant] had notice of a pattern of unconstitutional acts by her subordinates"). Here, like her custom claim, Plaintiff has failed to identify specific prior instances of unconstitutional or improper conduct that would put the Supervisory Defendants on notice that their training and supervisory regimens were constitutionally insufficient. While Plaintiff claims the allegations here are similar to those made in *Troupe*, the plaintiff in that case made specific allegations concerning "previous jail deaths" that had been "discussed by recent media reports, the St. Louis City Council, and internal reports." *Troupe*, 143 F.4th at 962. Plaintiff has made no such allegations in this case against any of the Supervisory Defendants. As such, Plaintiff's Count II against Defendants St. Louis County, Dr. Davis, and Nelson is dismissed.

## IV.   Counts IV and V:  ADA and RA Claims

Plaintiff claims that St. Louis County and the individual defendants violated his rights under both the ADA and the RA by "refusing to provide medically necessary treatment for [Williams's] disability." Doc. [1] ¶¶ 120-32. "Title II of the ADA . . . prohibits qualified individuals with disabilities from being excluded from participation in or the benefits of services, programs, or activities of a public entity." *Randolph v. Rogers*, 170 F.3d 850, 857 (8th Cir. 1999) (citing 42 U.S.C. § 12131 *et seq.*). To prevail on a Title II ADA claim, a plaintiff must establish:  (1) that he is a person with a disability as defined by statute; (2) that he is otherwise qualified for the benefit in question; and (3) that he was excluded from the benefit because of discrimination based upon his disability. *Id.* at 858 (citing 42 U.S.C. § 12131 *et seq.*). "A qualified individual with a disability is defined as any person who 'meets the essential eligibility requirements for the receipt of services or the participation

in programs or activities provided by a public entity.'" *Id.* (quoting 42 U.S.C. § 12131(2)).  A state prison is a "public entity" under the statute.  *Pennsylvania Dept. of Corr. V. Yeskey*, 524 U.S. 206, 210 (1998).  For all intents and purposes, "[t]he ADA and RA are 'similar in substance' and, with the exception of the RA's federal funding requirement, 'cases interpreting either are applicable and interchangeable.'"  *Randolph*, 170 F.3d at 857 (quoting *Gorman v. Bartch*, 152 F.3d 907, 912 (8th Cir. 1998)).

Defendants argue that Plaintiff cannot establish a *prima facie* case under Title II because ADA and RA claims are based solely on medical treatment decisions.  Docs. [12] at 14, [23] at 14; [44] at 12.  The Court agrees.[3]  Assuming all of Plaintiff's factual allegations to be true and drawing all reasonable inferences in her favor, *Lustgraaf*, 619 F.3d at 873, she fails to plead violations of either the ADA or the RA.  There is a difference between alleging inadequate treatment for a prisoner's disability and alleging that a prisoner was denied access to medical services *because of* his or her disability.  *See Postawko v. Missouri Dep't of Corr.*, 2017 WL 1968317, at *13 (W.D. Mo. May 11, 2017); *Rogers v. Missouri Dep't of Corr.*, 2011 WL 3320521, at *4 (W.D. Mo. Aug. 2, 2011).  While Plaintiff has sufficiently stated a claim that certain Defendants were deliberately indifferent to Williams's serious medical needs, she does not allege facts sufficient to establish that such inadequate treatment was discriminatory in nature.

In *Postawko v. Missouri Department of Corrections*, the United States District Court of the Western District of Missouri found that a plaintiff did "not merely allege inadequate medical treatment" where the complaint asserted that the MDOC "follow[ed] one policy for inmates with chronic [Hepatitis C] and another policy for inmates with other disabilities under which they do receive lifesaving medications."  2017 WL 1968317, at *13.  There, the plaintiff successfully pled a claim under the ADA because the allegations challenged a policy under which inmates with a certain disability were not provided access to lifesaving medication, while inmates with other disabilities did have access to lifesaving medications. *Id.*; *see also McNally v. Prison Health Servs.*, 46 F. Supp. 2d 49, 58-59 (D. Me. 1999) (rejecting the argument that a plaintiff could allege only that he received poor medical treatment and

---

[3] Defendants leveled several other arguments against Plaintiff's ADA and RA claims as well.  Docs. [12], [23], [44].  The Court declines to address those arguments because it finds that Plaintiff's ADA and RA claims fail because her allegations are based solely on medical treatments.

not bring an ADA claim where the plaintiff demonstrated that the jail refused to provide him with HIV medications but allowed inmates access to medications for other disabilities).

Drawing all reasonable inferences in her favor, Plaintiff's claims are based solely on the alleged inadequate care Williams received related to his OUD.  *See, e.g.,* Doc. [1] ¶¶ 122, 124, 130 (Defendants "refus[ed] to provide medically necessary treatment").  Plaintiff makes no attempt to allege that Williams was treated differently than other inmates with respect to his medical conditions.  Instead, the allegations appear to be "formulaic recitation[s] elements" of an ADA or RA claim, which the Court is not required to accept as true.  *Iqbal*, 556 U.S. at 679.  Reading Plaintiff's Complaint as a whole, the Court finds no factual allegations that support a finding that his claims are based on anything other than medical treatment decisions.  Those allegations alone cannot support a claim under the ADA or RA.  *See Burger v. Bloomberg*, 418 F.3d 882, 883 (8th Cir. 2005) (per curiam) ("[W]e agree with two other circuits that have recently concluded a lawsuit under the [RA or ADA] cannot be based on medical treatment decisions").  Therefore, Plaintiff's Counts IV and V against all Defendants are dismissed.

## V.      Rule 12(b)(5) Insufficient Service of Process

"In the absence of service of process (or waiver of service by the defendant), a court ordinarily may not exercise power over a party the complaint names as defendant." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999).  "If a defendant is improperly served, a federal court lacks jurisdiction over the defendant," *Printed Media Servs., Inc. v. Solna Web, Inc.*, 11 F.3d 838, 843 (8th Cir. 1993) (citation omitted), even if the defendant "had actual notice of the lawsuit," *Adams v. AlliedSignal Gen. Aviation Avionics*, 74 F.32d 882, 885-86 (8th Cir. 1996) (citing *Printed Media Servs.*, 11 F.3d at 843).

Service of a complaint is governed by Rule 4 of the Federal Rules of Civil Procedure.  Service may be achieved by the individual being served personally; by leaving a copy of the summons and complaint at the person's residence with a suitable person who resides there; by delivering the summons and complaint to an agent legally authorized to receive them for such purposes; or by a method approved under state law in the state where the district court is located or where the individual is served.  Fed. R. Civ. P. 4(e).

Here, an executed proof of service of filed on July 9, 2025, stating that an employee of Plaintiff's attorney's law firm served Maxwell on July 7, 2025, at 2322 Oaker Dr., Arnold,

Missouri 63010.  Doc. [7] at 2.  On October 24th, Maxwell, through counsel, filed a consent motion for leave to file an answer out of time with an attached answer, in which she asserted, *inter alia*, that "Plaintiff failed to properly serve" her.  Doc. [28-1] ¶ U.  On October 31st, the Court denied the motion "for failure to show good cause of excusable neglect per Fed. R. Civ. P. 6(b)(1)(B)."  Doc. [30].  On December 4, Maxwell filed an amended motion to leave to file a motion to dismiss out of time and attached a motion to dismiss and a supporting affidavit.  Docs. [31], [32], [33].  Maxwell argues that dismissal is necessary under Rules 12(b)(5) and 4(m), as she was not properly served.  Doc. [31].  Maxwell attached an affidavit stating that she "did not receive a copy of the Summons and Complaint in this case on July 8, 2025," and only received a copy when "it was mailed to [her] by [her] attorney in November 2025."  Doc. [31-1] ¶¶ 6-7.  Maxwell further states that neither she nor any of her family members lived, resided, or worked at 2322 Oaker Dr. at any time.  *Id.* ¶¶ 4-5.  In response, Plaintiff argues that Maxwell waived any affirmative defense under Rule 12(b)(5) by filing her initial motion for leave and that any such defense is now untimely under Rule 12(h)(1).  Doc. [35].  The Court granted Maxwell's amended motion for leave, Doc. [38], and will thus address her motion to dismiss.

Rule 4(m) directs the Court, after notice to the plaintiff, to dismiss an action against a defendant upon whom service has not been made within 90 days after the filing of the complaint, or order that service be made within a specified time.  As applied to this matter, the Rule 4(m) period for service of the Complaint expired on August 12, 2025, 90 days after its filing.  Plaintiff has not presented evidence contesting Maxwell's statement that she was not served, instead relying on argument that she waived the defense by attempting to file an answer.  Plaintiff does not acknowledge that Maxwell did assert an affirmative defense based on improper service of process in her proposed answer.  *See* Doc. [28-1] ¶ U.  Rule 12(h)(1) states that a party can waive "any defense listed in Rule 12(b)(2)-(5) by," as relevant here, failing to "include it in a responsive pleading or in an amendment allowed by Rule 15(a)(1) as a matter of course."  But Maxwell asserted the affirmative defense in her proposed responsive pleading, so the Court will not find that she waived it by not discussing it in her motion for leave to file that very pleading.

On the record before the Court, dismissal of Plaintiff's claims against Maxwell is warranted under Rules 12(b)(5) and 4(m).  The Court will grant Plaintiff a brief extension

13

of 14 days to properly serve Maxwell under Rule 4(e) and file a properly executed proof of service under Rule 4(l).  Failure to submit proof of proper and timely service within 14 days of this Order will result in dismissal of Maxwell as a party to this suit.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motions to Dismiss, Docs. [11], [22], [31], and [43] are **GRANTED IN PART** and **DENIED IN PART** as follows.  Defendants' Motions to Dismiss Counts II, III, IV, and V are **GRANTED,** and the counts are **DISMISSED** without prejudice.  Defendants' Motions to Dismiss Count I are **GRANTED IN PART** as to Defendants Kelly Wilkens, Dr. Dawn Davis, and Valerie Nelson and **DENIED IN PART** as to Defendants David Dooley and Janie Stephens**.**  An Order of Partial Dismissal will accompany this Memorandum and Order.

**IT IS FURTHER ORDERED** that Defendants St. Louis County, Kelly Wilkens, Dr. Dawn Davis, and Valerie Nelson are terminated as parties to this litigation.

**IT IS FURTHER ORDERED** that **within fourteen (14) days of the date of this Memorandum and Order**, plaintiff will file an amended proof of service under Federal Rule of Civil Procedure 4(l), showing that defendant Lisa Maxwell was properly served with the summons and complaint under Rule 4(e).  In the absence of an amended proof of service that complies with Rule 4(e) and (m), Plaintiff shall show cause why her claims against defendant Lisa Maxwell should not be dismissed without prejudice for failure to effect timely service of process upon her.  Failure to timely comply with this order will result in dismissal of Plaintiff's claims against defendant Lisa Maxwell without prejudice and without further notice.

Dated this 30th day of March, 2026.

SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE

14